**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-00031-JLK-TPO

ANNA WISE, on behalf of
herself and the Proposed Rule 23 Class,

Plaintiff,

v.

AMENTUM SERVICES INC.,
GANA-A'YOO SERVICES CORPORATION,
SIX MILE LLC,
GRAY HAWK GLOBAL CORPORATION, and
LEIDOS, INC.,

Defendants.

---

**DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION (ECF 105)**

---

Pursuant to Fed. R. Civ. P. 72(b) Defendants Leidos, Inc., Amentum Services Inc., Gana-A'Yoo Services Corporation, Gray Hawk Global Corporation, and Six Mile LLC (collectively, "Defendants"), respectfully file Objections to Magistrate Judge O'Hara's March 31, 2026 Report and Recommendation, ECF 105, and states as follows:

## INTRODUCTION

Although Magistrate Judge O'Hara correctly recommended that Count II, Plaintiff's claim under the Colorado Non-Compete Statute be dismissed, he erred in failing to recommend dismissal of Count I, Plaintiff's Sherman Act Section 1 claim, based on fundamental deficiencies apparent from the face of the First Amended Complaint ("FAC"). Specifically, the FAC alleges

Defendants are working together in a prime–subcontractor vertical relationship to jointly perform a government contract, the Antarctic Support Contract ("ASC"). The Recommendation completely disregards this relationship among the Defendants even though it is plainly alleged on the face of the FAC. Moreover, the Recommendation ignores that the alleged restraints that Plaintiff challenges as *per se* violations of Section 1 of the Sherman Act relate *solely* to Defendants' broader, legitimate vertical collaboration under the ASC: (1) that Defendants have allegedly agreed not to hire an ASC worker for the upcoming season if she has already accepted an offer from another Defendant; and (2) that Defendants agreed not to hire an ASC worker who has been listed as "ineligible for rehire" by any Defendant. Both restraints arise exclusively from Defendants' vertical relationship under the ASC.

This misreading of the FAC means the Recommendation fails to apply black-letter law correctly in at least two respects. *First*, the alleged no poach and blacklisting arrangements related to the ASC are not "concerted action" under Section 1 of the Sherman Act because the Defendants are lawfully cooperating, not competing, employers under the ASC. *Second*, even if they were deemed competing employers, because these alleged restrictions relate solely to a broader, legitimate collaboration to hire for the ASC they are not "naked" restraints, and therefore, they cannot be challenged under the *per se* standard. The Court can correct these errors within the four corners of the complaint, drawing all inferences in favor of the Plaintiff, by dismissing Counts I and II of the FAC.

**LEGAL STANDARD**

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to [and] may accept, reject, or modify the recommended

disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). This "requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation." *Griego v. Padilla (In re Griego)*, 64 F.3d 580, 584 (10th Cir. 1995); *see also* Dissent from the Amendments to Local Rules of Practice, *In re Local Rules of Practice District of Colorado,* (D. Colo. Nov. 28, 2011) (S.J. Kane) (discussing Amend. D.C. Colo. L. Civ. R. 72.2E), https://www.cod.uscourts.gov/Portals/0/Documents/Judges/JLK/JLK_Dissent_DCCOLOLCivR72.2.pdf.

**ARGUMENT**

**I. Plaintiff Failed to Allege Concerted Action**

The FAC fails to plead a violation of Section 1 of the Sherman Act because, among other reasons, the FAC does not allege the challenged no poach and blacklisting arrangements to be "concerted action" among the Defendants under the ASC. ECF 69 at 17-23. This is because the FAC fails to allege Defendants are "'separate economic actors pursuing separate economic interests' [under the ASC] . . . such that the agreement 'deprives the marketplace of independent centers of decisionmaking,' . . . and thus of actual or potential competition." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 195 (2010) (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769 (1984)).[1]

[1] GSC and Six Mile are both wholly-owned subsidiaries of Gana-A'Yoo Limited and are thus incapable of conspiring under *Copperweld*. *Horst v. Laidlaw Waste Sys., Inc.*, 917 F. Supp. 739, 742 (D. Colo. 1996).

Whether there is concerted action is context specific because "[n]ot every instance of cooperation between two people is a potential contract, combination, or conspiracy, in restraint of trade." *Am. Needle*, 560 U.S. at 189-90 (cleaned up). Critically, *American Needle* requires a functional inquiry into how the co-conspirators are alleged to operate and whether they are alleged to have independent economic interests as to the challenged restraint. *Id.* at 191, 195. Here, according to the FAC, Defendants are all lawfully working together to perform under the same contract, the ASC, and the alleged restraints relate only to this joint effort. FAC ¶¶ 5-6, 20-23. As Plaintiff admitted in her opposition, the FAC does not allege that Defendants have any distinct or separate economic interests in performing the ASC. ECF 77 at 10 & n.3. Indeed, the only economic interests alleged are Leidos's prime contract with NSF and Defendants' subcontracts *with Leidos* for the ASC. FAC ¶¶ 5-6, 20-23.

Assuming these alleged facts are true, Defendants are "pursuing the common interests of the whole" in hiring ASC workers and have a "complete unity of interest" under the ASC—performing under the contract. *Am. Needle*, 560 U.S. at 195-96 (citations omitted). The Recommendation's contrary conclusion should be rejected for several reasons.

1. A fundamental error the Recommendation makes is failing to recognize that *American Needle* discusses *Copperweld* specifically to hold that the "separate economic actors pursuing separate economic interests" requirement for concerted action is *not* met simply because companies are unrelated parties like Defendants here. *Am. Needle*, 560 U.S. at 195; *Copperweld*, 467 U.S. at 769. The Recommendation therefore errs by relying primarily on the allegation that "Defendants are separate employers"—the "foundation for Plaintiff's theory of improper collusion"—to find concerted action. ECF 105 at 10; *see also id.* at 11, 12. The

Recommendation itself correctly acknowledges that "this fact is not determinative," ECF 105 at 10, and as a matter of law it is not. "There is not necessarily concerted action simply because more than one legally distinct entity is involved" in a restraint. *Am. Needle*, 560 U.S. at 192. Pleading more is required to show in the specific economic context alleged here—a prime contractor and its subcontractors working together to hire ASC support workers—that Defendants are "separate economic actors pursuing separate economic interests." ECF 105 at 12 (quoting *Am. Needle*, 560 U.S. at 197). Accepting this allegation as sufficient contravenes *American Needle*, which rejects a formalistic inquiry based solely on the existence of multiple entities.

But the only other allegation in the FAC on which the Recommendation relies to incorrectly find that Defendants are competitors—that individuals applying for an ASC position may apply with more than one Defendant, ECF 105 at 11—also does not address this question. The inquiry is not whether workers may apply to multiple entities; it is whether those entities possess independent economic interests such that they are capable of conspiring under Section 1. *Copperweld*, 467 U.S. at 769; *Am. Needle*, 560 U.S. at 197. And here, the ASC positions exist only because of Defendants' vertical collaboration under a government contract—not as competing offerings from economically independent employers. FAC ¶¶ 5-6, 19-23. Because these allegations do not speak to, much less resolve, the functional test for concerted action they cannot meet Plaintiff's burden to plead facts on the concerted action element that "nudge[] their claim[] across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

2. The Recommendation also misreads the FAC regarding the economic context for the alleged restraints and goes beyond reading the factual allegations in Plaintiff's favor. For example, the Recommendation states that "Defendants are correct that Plaintiff alleges agreement and cooperation between Defendants in some sense, *but only for the improper purpose of not competing with one another*." ECF 105 at 12 (emphasis in original). This misstates what the FAC alleges—that Leidos has entered into legitimate agreements with the subcontractor Defendants as permitted by the government to staff the ASC. For example, the FAC alleges "[t]he NSF contracts with Leidos, Inc., to manage all support-related workers through the Antarctic Support Contract ('ASC')" and "Leidos, as the prime contractor, hires its own support workers and also subcontracts with [the other Defendants]." FAC ¶¶ 5-6; *see also* ¶¶ 19-23 (describing the contract relationships). Indeed, these allegations establish that the only reason Amentum, Six Mile, GSC, and GHG are hiring for the ASC is *because of* their vertical agreements with Leidos. The subcontractor defendants otherwise could not independently hire for the ASC. These are dispositive facts on concerted action from the FAC—each subcontractor Defendant is wholly dependent on Leidos for the ability to hire ASC workers and what positions to hire for. ECF 69 at 19; ECF 84 at 7-8.

This is the key legal principle in *Holter* that the Recommendation fails to apply: when alleged co-conspirators are dependent on the permission of another co-conspirator to participate in the alleged market—as the subcontractor Defendants are dependent on Leidos here to hire under the ASC—they are not independent sources of decision-making in that market. *Holter v. Moore & Co.*, 702 F.2d 854, 856 (10th Cir. 1983). The Recommendation overlooks and misconstrues these allegations and draws the wrong conclusion as a result, stating "based on the

FAC, there would be 'nothing to prevent each of the [defendants] from making [their] own market decisions' relating to hiring prospective workers." ECF 105 at 12 (quoting *Am. Needle*, 560 U.S. at 200). The Recommendation cites to nothing in the FAC to support that conclusion, and it could not. This was clear error. "Although we assume the truth of the facts alleged in the complaint, we cannot assume any facts necessary to the [Plaintiff's] claim [she] has not alleged." *Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1035 (9th Cir. 2005) (upholding dismissal on the pleadings for lack of concerted action because the plaintiffs "did not allege in what manner [the defendants] had divergent economic interests").

3. The Recommendation simply ignores all of the other allegations in the FAC that show that Defendants are lawfully performing under the ASC to act as a single economic enterprise. For example, each Defendant is responsible for hiring entirely different positions that Leidos assigned them (or itself) for the ASC. FAC ¶¶ 5-6, 19-23; ECF 50 (Scheduling Order) at 8-9. Leidos links to the job listings of its "Partners" (*i.e.*, the subcontractor Defendants) on its ASC website. FAC ¶ 35; ECF 69 at 13. The recruiters and hiring managers for all of the Defendants allegedly work out of the same office. FAC ¶¶ 37, 39. Employment benefits for all ASC workers, regardless of who recruits them, are the same. *Id.* ¶¶ 81-84. And Defendants encourage their ASC workers to work for different Defendants in future seasons. ECF 1 (Original Complaint) ¶¶ 10-11, 44, 81-83. Taken together, these allegations describe an integrated and coordinated staffing structure for the ASC—not independent, competing employers, with separate interests who are capable of conspiring in the Sherman Act sense. *See*

*Am. Needle*, 560 U.S. at 195-96. Ignoring these allegations was clear error.[2] *Ass'n of Surgical Assistants v. Nat'l Bd. of Surgical Tech. & Surgical Assisting*, 127 F.4th 178, 187-89 (10th Cir. 2025) (upholding dismissal because allegations in the complaint made claim implausible).

## II. Plaintiff Failed to Plead a Section 1 Claim Under the *Per Se* Rule

Plaintiff has asserted only a *per se* claim under Section 1 of the Sherman Act. ECF 105 at 9; FAC ¶ 16. At the motion to dismiss stage, the Court must determine if Plaintiff has sufficiently pled allegations under the specific standard of review she alleges. *In re Ins. Brokerage Antitrust Litig.*, 618 F. 3d 300, 319 (3d Cir. 2010) (dismissing *per se* claim because obligation to meet *per se* standard "bears on the[] pleadings"); *Cohlmia v. Ardent Health Servs., LLC*, 448 F. Supp. 2d 1253, 1267 (N.D. Okla. 2006) (dismissing *per se* antitrust claim because allegations did not describe an "immediately obvious antitrust violation"). The Recommendation fails to apply this standard.

In *United States v. DaVita Inc.*, this Court described a "three step[]" process to determine whether an alleged restraint qualifies for *per se* treatment. 2022 WL 266759 at *4 (D. Colo. Jan. 28, 2022). **Step 1:** The Court must "determine if the conduct falls into a category that has been

---

[2] Although the lack of concerted action is apparent on the face of the FAC, it is also demonstrated by Presidential Memorandum No. 6646 which "sets forth the National Science Foundation's overall management responsibilities for the entire United States national program in Antarctica." 45 C.F.R. § 675.1. It directs NSF to "budget for and manage the entire United States national program in Antarctica, including logistic support activities so that the program may be managed as a *single package*" including "us[ing] commercial support and management facilities where these are determined to be cost effective." (emphasis added) Available at https://www.usap.gov/USAPgov/travelAndDeployment/documents/ParticipantGuide-AppendixB.pdf. As an official Presidential (and NSF) record it is "beyond debate" and taking judicial notice of it is "proper," *Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1028 n.5 (10th Cir. 2023), but Magistrate O'Hara declined to do so. ECF 105 at 14.

found to be subject to *per se* treatment." **Step 2:** "[I]f the conduct does not fall into such a category," then the Court should "consider whether the creation of a new category of *per se* unreasonableness covering the conduct is appropriate." **Step 3:** If the answer is "yes" at either step 1 or 2, then, "[t]he court still cannot subject the conduct to *per se* treatment until it finds that the conduct was naked, i.e. it had no purpose except stifling competition." *Id.* (internal quotation marks omitted).

In their motion to dismiss, Defendants argued primarily that Plaintiff's *per se* claim fails to meet **Step 3**—that is, *even if* the no poach and blacklisting arrangements were determined to be agreements among competitors falling into a category of potential *per se* illegality, they are nevertheless not naked restraints on the facts alleged in the FAC and therefore are not *per se* illegal. ECF 69 at 27-28; ECF 84 at 15-17. Magistrate Judge O'Hara's Recommendation, like Plaintiff's opposition, focuses primarily on Step 1 and largely fails to address Defendants' argument on Step 3.

1. The Recommendation observes, correctly, that some alleged no poach arrangements that are not part of a procompetitive collaboration have been held to be naked *per se* illegal market allocation arrangements. ECF 105 at 19 citing (*United States v. DaVita Inc.*). This observation addresses Step 1 of the *Davita* framework. *Id.*; *see also*, *Davita*, 2022 WL 266759, *5-8. However, *Davita* never addressed whether the no poach agreement alleged in that case was part of a broader collaboration and therefore not naked, because the defendants there did not raise that argument. *Id.* at *6 ("[D]efendants have chosen not to raise [that] argument … reserving their right to litigate that issue later"). All *DaVita* addressed was "whether *this* non-

solicitation agreement has been sufficiently alleged to have allocated the market." *Id.* at *7 (emphasis in original).

Because the Recommendation ignores that the alleged no poach arrangement in this case relates only to Defendants' collaboration and contractual obligations under the ASC, it fails to properly apply *Davita* and the other cases it cites. ECF 105 at 19-20. Where, as here, the FAC alleges that the challenged conduct operates solely within a broader, lawful collaboration, the restraint cannot be "naked" as a matter of law. The Recommendation cites but does not discuss *Giordano v. Saks Inc.*, 654 F.Supp.3d 174 (E.D.N.Y. 2023), cited in Defendants' opening brief, ECF 69 at 29, which is directly on point and decided on a motion to dismiss. There, the court dismissed a *per se* claim over an alleged no hire arrangement targeting "luxury retail employees" among Saks 5th Avenue and various luxury brands whose products Saks sells. 654 F. Supp. 3d at 184-85, 200-01. The court held that the alleged no hire could not be "naked" because, like here, plaintiffs "acknowledge[d] that Defendants collaborate" in the complaint and "[r]estraints that accompany such collaborative business relationships are generally not afforded per se treatment." *Id.* at 200-01 (citing *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006); *Major League Baseball Props. v. Salvino, Inc.*, 542 F.3d 290, 339 (2d Cir. 2008) (Cir. J. Sotomayor concurring); *Polk Bros., Inc. v. Forest City Enters., Inc.*, 776 F.2d 185, 188-89 (7th Cir. 1985)).

Instead, the Recommendation primarily relies on *United States v. Patel*, 2022 WL 17404509 (D. Conn. Dec. 2, 2022), ECF 105 at 18-20, a case that no party cited in the briefing, that was addressed only briefly at oral argument, and which involved a criminal indictment not subject to the *Twombly* plausibility pleading standard applicable here. *See United States v. Jones*, 2026 WL 304370, at *5 (D. Kan. Feb. 5, 2026) (civil pleading standard does not apply to

a criminal indictment). Regardless, *Patel* supports Defendants' position. In *Patel*, the court held the indictment pled a naked restraint only because:

> "[T]here are no allegations of coordination among [the co-conspirators]. In each of the [non-*per se*] cases discussed above, the no hire or no solicitation is ancillary to a cooperative agreement that includes each of the horizontal parties. Here the Indictment alleges that [the co-conspirators] do not cooperate in the outsourcing agreements, but instead compete to win the outsourcing agreements."

*Patel*, 2022 WL 17404509 at *14. Here, the FAC pleads the opposite. There are no allegations that the subcontractor defendants are currently competing with one another for subcontracts with Leidos; the FAC alleges that they all have their own duly awarded subcontracts. FAC ¶¶ 5-6. And as discussed above, the FAC alleges that all the Defendants are coordinating under the ASC. *Id.* ¶¶ 5-6, 34-37. Beyond *Bogan v. Hodgkins*, 166 F.3d 509 (2d Cir. 1999), and *Giordano*, the other no poach cases in the Recommendation are distinguishable for the same reason—they do not involve defendants engaged in a related collaboration, unlike here.[3] ECF 105 at 6-9, 16-20.

2. In so far as it addresses it, the Recommendation misconstrues Defendants' *per se* argument to be a reprise of their argument that the FAC fails to allege concerted action. ECF 105 at 16. In fact, Defendants' *per se* argument is different: it assumes that if the Court were to find that Defendants *are* competitors under the ASC, because Defendants are *also* alleged to be working together pursuant to a vertical arrangement with Leidos, the alleged restrictions on their competition *related to that collaboration* cannot be "naked," and thus they cannot be *per se* illegal. ECF 69 at 27-29; ECF 84 at 15-17; *see also Giordano*, 654 F.Supp.3d at 201 ("Plaintiffs

[3] The Recommendation also cited *Patel* to attempt to distinguish *Bogan*, but that part of the *Patel* decision dealt with whether the indictment pled a market allocation—i.e. Step 1—not whether the alleged no hire was a naked restraint. *Patel*, 2022 WL 17404509, at * 10-11.

state that Saks and the Brand Defendants are competitors … but they also acknowledge that Defendants collaborate.… Such a relationship is not the same as one between "naked" competitors. Restraints that accompany such collaborative business relationships are generally not afforded per se treatment").

This error is compounded by the Recommendation's misunderstanding of the FAC on this point. It concludes that "Defendants request the Court *construe the FAC in their favor* by arguing 'that the supposed arrangements *relate only* to Defendants' joint efforts to support Leidos's performance under the ASC.'" ECF 105 at 17 (quoting ECF 69 at 28) (emphasis added); *See also id*. at 20. But Defendants' argument does not depend on any particular interpretation or explanation of the FAC — it rests on the allegations themselves. The FAC is clear that the alleged no poach and blacklisting arrangements relate exclusively to Defendants' hiring for the ASC and not to any other context outside the ASC. *See e.g.* FAC ¶ 3 ("This illegal conduct is systemic, impacting the entire market in which Defendants would otherwise compete: the United States Antarctic Program ("USAP)"); ¶5 (all supported-related USAP workers hired through the ASC); ¶ 131 (proposed class is limited to ASC workers). And Plaintiff never disputed that the FAC describes a teaming arrangement between Leidos and the subcontractors to perform the ASC, or that such arrangements have overall pro-competitive benefits and are encouraged by the Federal government under its Federal Acquisition Regulation (FAR). ECF 69 at 28 & n. 9 (citing 48 C.F.R. § 9.602(a)(1)-(2)).

Because the Recommendation overlooks this fundamental premise in the FAC, it largely fails to address the governing law on naked restraints. Case after case cited by the parties hold that only horizontal restraints "that are <u>nakedly</u> unrelated" to a broader collaboration are *per se*

illegal. *Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 724-25 (6th Cir. 2019) (emphasis in original) (citing *Dagher*, 547 U.S. at 7-8); *see also Polk Bros.* 776 F.2d at 190 (if the challenged "agreement is part of a cooperative venture with prospects for increasing output … it should not be condemned *per se*."); *Giordano*, 654 F.Supp.3d at 200-01 (distinguishing alleged conduct from a naked restraint on motion to dismiss); *Foreign Trade Corp. v. Otter Prods., LLC*, 2017 WL 11686317, at *4 (D. Colo. Feb. 15, 2017) (same). Here, the FAC's own allegations that the restraints relate only to Defendants' collaboration to perform under the ASC foreclose treatment of the alleged no poach and blacklisting arrangements as naked restraints. ECF 69 at 27-28; ECF 84 at 15-17; *see Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1203 (10th Cir. 2006) (dismissing *per se* claim because allegations did not show alleged restraint was "manifestly anticompetitive'") (internal citation omitted); *NCAA v. Alston*, 594 U.S. 69, 87-88 (2021) (restraint under joint venture that suppressed compensation and output in labor market evaluated under rule of reason); *SCFC ILC, Inc. v. Visa USA*, *Inc.*, 36 F.3d 958, 964 (10th Cir. 1994); (*per se* scrutiny "inappropriate[]" for restraint related to a legitimate collaboration); *Rothery Storage & Van Co. v. Atlas Van Lines*, *Inc.*, 792 F.2d 210, 224 (D.C. Cir. 1986) (same).

The closest the Recommendation comes to addressing the governing law on naked restraints is to attempt to distinguish the Defendants' collaboration under the ASC with the fully integrated joint venture in *Dagher*. ECF 105 at 17. But *Dagher* never says sharing profits is a requirement for a non-naked restraint, and no case cited by the parties or Recommendation does. *See, e.g.*, *Otterbox*, 2017 WL 11686317, at *4 ("While not all of the attributes of a formal joint venture are present here, Otterbox's system of distribution is a cooperative venture among

Otterbox and its distributors and resellers"); *Giordano*, 654 F.Supp.3d at 200-01 (resale arrangements); *SCFC ILC, Inc.*, 36 F.3d 958, at 963 ("[V]irtually any collaborative activity among business firms may be called a joint venture…").

3. The Recommendation declines to address *United States v. Brewbaker*, 87 F.4th 563, 576-79 (4th Cir. 2023), ECF 105 at 17 n.3 even though Defendants cited *Brewbaker* in their opening brief, ECF 69 at 26, it was cited in Plaintiff's Opposition, ECF 77 at 18, and Defendants' Reply, ECF 84 at 16-17, and the parties had the opportunity to address it at oral argument.[4] There, the Fourth Circuit held that the government's bid-rigging indictment should have been dismissed for failure to plead a *per se* offense because, like the alleged no-poach and blacklisting arrangements here, the indictment described on its face a "broader relationship[]" among the parties with both vertical and (allegedly) horizontal aspects. 87 F.4th at 577. The court held that it could not "disregard the parties' broader relationships when classifying the restraint," and therefore could not classify the bid-rigging aspect of that relationship as *per se* illegal. *Id*. The same reasoning applies here: Plaintiff's Amended Complaint alleges a series of vertical arrangements between Leidos and each subcontractor Defendant, FAC ¶¶ 5-6, and also alleges a broader relationship among all Defendants to staff the ASC, FAC ¶¶ 4-7. An "agreement between two competing parties involves different dynamics and produces different

[4] The Recommendation's statement that Defendants' discussion of *Brewbaker* in their reply was a "new argument" is not correct. On reply Defendants cited *Brewbaker* for the same argument they made in their opening brief—that the "broader relationship" of ASC collaboration through subcontracting among the Defendants alleged in the FAC precludes applying the *per se* rule here. *Compare* ECF 84 at 16-17 *with* ECF 69 at 27-28. Defendants repeatedly referred to the inherently vertical prime contractor/subcontractor relationship in their opening brief, even if it did not use the term "vertical." *E.g.* ECF 69 at 11, 12, 19, 27-28.

effects on competition than one between parties who simultaneously compete and collaborate," and the latter cannot be condemned as *per se* illegal. *Brewbaker*, 87 F.4th at 577.[5]

**CONCLUSION**

This Court should thus reject Magistrate Judge O'Hara's order that denies Defendants' motion to dismiss Count I of Plaintiff's First Amended Complaint.

[5] Defendants object to the findings in Section III of the Recommendation concerning Antitrust injury and raise this objection to preserve their arguments for appeal. Defendants also object to the findings in Section III of the Recommendation concerning the statute of limitations and raise this objection to preserve their arguments for appeal.

Dated: April 14, 2026

Respectfully submitted,

*s/ Perry Lange*
Perry A. Lange
WILMER CUTLER PICKERING
HALE & DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6493
perry.lange@wilmerhale.com

Sydney Donovan
WILMER CUTLER PICKERING
HALE & DORR LLP
1225 17th Street
Suite 2600
Denver, CO 80202
(720) 274-3151
Sydeny.Donovan@wilmerhale.com

*Counsel for Defendant Leidos, Inc.*

Adam L. Hudes
CRAIG P. SEEBALD
MARISA PONICA
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
(202) 639-6578
ahudes@velaw.com
cseebald@velaw.com
rponcia@velaw.com

*Counsel for Defendant Amentum Services, Inc.*

Diane Rebecca Hazel
MORRISON & FOERSTER
370 Seventeenth Street
Suite 4200
Denver, CO 80202-5638
dhazel@mofo.com

*Counsel for Defendants Gana-A'Yoo Services Corporation and Six Mile LLC*

Bryant Steven Banes
NEEL HOOPER & BANES, P.C.
1800 West Loop South
Suite 1750
Houston, TX 77027-3272
(713) 629-1800
bbanes@nhblaw.com

*Counsel for Defendant Gray Hawk Global Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2026 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

*s/ Perry Lange*
Perry A. Lange