**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-00031-JLK-TPO

ANNA WISE, on behalf of herself
and the Proposed Rule 23 Class,

Plaintiff,

v.

AMENTUM SERVICES INC.;
GANA-A'YOO SERVICES CORPORATION;
SIX MILE LLC;
GRAY HAWK GLOBAL CORPORATION; and
LEIDOS, INC.

Defendants.

---

**PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION**

---

Pursuant to Fed. R. Civ. P. 72(a), Plaintiff Anna Wise respectfully submits the following objection to Magistrate Judge O'Hara's Recommendation (hereafter "Recommendation") (ECF No. 105) regarding Defendants' motions to dismiss. Plaintiff objects only to the portion of the Recommendation that recommends dismissal of Count II of the First Amended Complaint ("FAC") (ECF No. 67), which arises under Colorado's noncompete statute, C.R.S. § 8-2-113, on the grounds that only a party to a challenged covenant may sue to enforce the statute. (Recommendation at 22–24.)

**BACKGROUND**

As detailed in Plaintiff's opposition to the motion to dismiss Counts I and II, Defendants are contractors who hire and deploy seasonal support staff at the National Science Foundation's research base in Antarctica. (*See* Pl.'s Opp'n to Defs.' Mot. to Dismiss Counts I & II ("Pl.'s

Opp'n") at 3, ECF No. 77.) Each Defendant is a fully independent corporate entity. (*Id.*) Plaintiff worked in Antarctica for several of the Defendants between 2015 and 2023. (*Id.* at 3–4; *see also* FAC ¶¶ 86–129.) Plaintiff initiated this putative class action to challenge Defendants' anticompetitive hiring practices, including the agreements between Defendants not to hire each other's workers (i.e., "no-hire" or "no-poach" agreements) and the collective blacklisting of workers marked ineligible for rehire by any single Defendant. (Pl.'s Opp'n at 4–5.) Defendants' practices harm workers including Plaintiff by, *inter alia*, reducing workers' bargaining power, stifling dissent, and suppressing wages and benefits. (*Id.* at 5; FAC ¶¶ 52–55, 77–79.)

Plaintiff filed the operative complaint on June 4, 2025, alleging violations of Section 1 of Sherman Act (Count I) and Colorado's noncompete statute (Count II) against all Defendants and on behalf of the putative class, along with individual discrimination and retaliation claims (Counts III–V) against Defendants Six Mile and Amentum (FAC ¶¶ 139–180.) On July 9, 2025, Defendants filed two motions to dismiss, one focused on Counts I and II and a second focused on Counts II–V (Defs.' Mot. to Dismiss Counts I & II ("MTD I"), ECF No. 69; Defs. Six Mile & Amentum's Mot. to Dismiss Counts II-V ("MTD II"), ECF No. 70.)) The motions to dismiss were referred to Magistrate Judge O'Hara (ECF No. 54), who heard argument on December 12, 2025. (Min. Entry, ECF No. 103.) The individual discrimination and retaliation claims at issue in MTD II have since been settled and dismissed by stipulation. (ECF Nos. 93 & 101.)

On March 31, 2026, Magistrate Judge O'Hara entered his Recommendation that MTD I be denied as to Count I and granted as to Count II, on the grounds that C.R.S. § 8-2-113 does not provide a cause of action to a worker who is not a *party* to the challenged noncompete agreement. (Recommendation at 22.) Judge O'Hara concluded that, because the alleged agreements were

between the Defendants—not between Defendants and their workers—Plaintiff failed to state a claim. (*Id.* at 24.) Judge O'Hara did not reach Defendants' alternative argument that the presumption against extraterritoriality renders C.R.S. § 8-2-113 inapplicable to agreements concerning employment in Antarctica. (*Id.* at 22; *see* MTD II at 15–16.) Plaintiff timely files this objection to the Recommendation as it pertains to Count II. *See* Fed. R. Civ. P. 72(a).

## LEGAL STANDARD

This Court is required to conduct a *de novo* review of those portions of a magistrate judge's recommendation on a dispositive issue to which a timely objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). When interpreting and applying a state statute, this court "must attempt to predict what the state's highest court would do." *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003). The Colorado Supreme Court instructs that, "[w]hen interpreting a [state] statute," its primary goal is to "ascertain and effectuate the intent of the General Assembly," beginning "with the statute's express language[.]" *Apodaca v. Allstate Ins. Co.*, 255 P.3d 1099 (Colo. 2011) (en banc) (citations omitted).

## ARGUMENT

### I. The Recommendation erred by concluding that Colorado's noncompete statute is inapplicable to agreements between employers.

In evaluating whether the FAC states a claim under C.R.S.§ 8-2-113, the Recommendation concludes that the statute applies only to "covenants not to compete between employer and employee." (Recommendation at 23.) The Recommendation's blinkered interpretation disregards the plain text of the statute, the purpose of the statutory scheme, and persuasive comparisons to analogous statutes from other states.

### A. The plain language of C.R.S. § 8-2-113 applies to no-poach and no-hire agreements between employers.

Interpretation of a state statute begins with "the plain and ordinary meaning of the statutory language, reading its words and phrases in context" with the goal of "giving consistent harmonious and sensible effect to all parts." *Sentinel Colorado v. Rodriguez*, 577 P.3d 48, 52 (Colo. 2025) (alteration adopted and citations omitted). "[I]f the language in a statute is clear and unambiguous," the Court must "give effect to its plain meaning and look no further." *Cowen v. People*, 431 P.3d 215, 218 (Colo. 2018). Here, the plain language of Colorado's noncompete statute prohibits ***any*** agreement that restricts an employee's right to work elsewhere, without regard to whether the contract is a vertical agreement between the employer and the employee or a horizontal agreement between two or more employers.

Colorado's non-compete law has long included a broad prohibition on employer conduct, subject to specific statutory exceptions, codified at C.R.S. § 8-2-113(2). That provision states:

> (2)(a) Except as provided in subsections (2)(b), (2)(d), and (3) of this section, a covenant not to compete that restricts the right of an individual to receive compensation for performance of labor is void.

C.R.S. § 8-2-113(2). In 2022, the Colorado General Assembly enacted substantive revisions to C.R.S. § 8-2-113, including the addition of an affirmative cause of action for workers harmed by unlawful non-competes:

> (8)(a) An employer shall not enter into, present to a worker or prospective worker as a term of employment, or attempt to enforce any covenant that is void under this section.
>
> [(8)](b) An employer that violates subsection (8)(a) of this section is liable for actual damages and a penalty of five thousand dollars per worker or prospective worker harmed by the conduct. . . . In addition to injunctive relief and the penalty allowed in this subsection (8)(b), a worker or prospective worker may recover

> actual damages, reasonable costs, and attorney fees in any private action brought under this section.

C.R.S. § 8-2-113(8). The plain language of these subsections encompasses no-poach and no-hire agreements like the one alleged in the FAC. (*See* FAC ¶¶ 12; 66–72.) Subsection 2(a) prohibits, without limitation, covenants not to compete that "restrict[] the right of an individual to receive compensation for the performance of labor." C.R.S. § 8-2-113(2)(a). That is precisely what a no-hire agreement does. Subsection 8(a) is even clearer: It prohibits employers from (1) entering into, (2) presenting to a worker or prospective worker as a term of employment, ***or*** (3) attempting to enforce any covenant not to compete. *Id.* § 8-2-113(8)(a) (emphasis added). Any of these three acts is a violation of the statute, but only the second specifies that the counterparty to the agreement must be a worker, indicating that the other two violations are broader. *See McCoy v. People*, 442 P.3d 379, 389 (2019) ("[W]e read [the statutory] scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we must avoid constructions that would render any words or phrases superfluous[.]").

Instead of engaging with this language, the Recommendation instead scrutinizes several surrounding provisions and erroneously concludes that they "support[] Defendant's interpretation." (*Id.* at 23.) Looking at those surrounding provisions in context, it is clear they are either irrelevant to the interpretive issue at hand or support Plaintiff's interpretation. First, the Recommendation cites C.R.S. § 8-2-113(4), which provides that even certain covenants not to compete that are otherwise permitted under the statute are void if workers do not receive adequate notice of them. (*Id.*) It does not, however, follow that all covenants not to compete are between workers and employers. Indeed, one of the types of permitted agreements is a "covenant not to compete related to the purchase and sale of a business, a direct or indirect ownership share in a

business, or all or substantially all of the assets of a business that restricts competition by an owner of an interest in the business." C.R.S. § 8-2-113(3)(c). This type of covenant arises in a business-to-business transaction, not a worker-employer relationship. This provision and the Recommendation's conclusion that only worker-employer agreements violate the statute cannot be reconciled.

Second, the Recommendation cites C.R.S. § 8-2-113(5), which states that "a provision of an employment agreement or any other agreement enforceable at law that does not include an unlawful restrictive covenant remains enforceable and subject to any damages or equitable remedy otherwise available at law." (Recommendation at 23.) While it is true that this provision names "employment agreement[s]," it also contains the following words: "*or any other agreement*[.]" C.R.S. § 8-2-113(5). If only employment agreements were covered by the statute, then the "any other agreement" language would be meaningless. Fundamental principles of statutory interpretation compel the conclusion that the statute does *not* apply only to employment agreements. *See McCoy*, 442 P.3d at 389.

Third, the Recommendation cites C.R.S. § 8-2-113(7), which indicates that "[a] worker who is a party to a covenant not to compete, or a subsequent employer that has hired or is considering hiring the worker, may seek declaratory judgment . . . that the covenant [] is unenforceable." (Recommendation at 23.) This provision merely specifies a limited remedy for those workers who *are* parties to a noncompete. And, contrary to the Recommendation's conclusion that "only counterparties may enforce the statue" (*id.*), it specifically contemplates litigation by third parties (here, subsequent employers) who are harmed by a covenant to which they are not a party.

The Recommendation's misplaced focus on and misinterpretation of surrounding provisions distracts from the clear and unambiguous language of subsections 2 and 8, which together provide a remedy for workers like Plaintiff whose right to work is impeded by a covenant not to compete entered into between employers.

**B. It is not "black letter" law that covenants not to compete must be between employer and employee.**

The Recommendation's interpretation of C.R.S. § 8-2-113 is colored by its unsupported conclusion that it is "black letter law" that covenants not to compete must be "between employer and employee." (Recommendation at 23.) This is wrong. To the contrary, Black's Law Dictionary defines a "covenant not to compete" as "[a] promise, usu. in a sale-of-business, partnership, or employment contract, not to engage in the same type of business for a stated time in the same market as the buyer, partner, or employer." *Covenant*, *Black's Law Dictionary* (12th ed. 2024). The first and second examples are of a business-to-business agreements; not until the third example does Black's Law Dictionary identify a covenant not to compete between employers and employees. *Id*. This is consistent with both the language of § 8-2-113 and case law interpreting it. As noted above, § 8-2-113 explicitly discusses covenants not to compete that arise in relation to the purchase or sale of a business, and such covenants have been recognized under Colorado law for decades, if not longer. For example, *Keller Corp. v. Kelley*, 187 P.3d 1133, 1135 (Colo. App. 2008) examines a covenant not to compete between a franchisor and a franchisee—i.e., two businesses.[1]

[1] The sources cited in the Recommendation for the proposition that "[b]y its very nature, a covenant not to compete is a contract between an employee and an employer" do not establish any such rule. (Recommendation at 22-23.) *Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058 (Colo. 2011), which the Recommendation relies on, interprets a covenant not to compete between

Moreover, while Colorado courts have not directly confronted the question at issue in this case, they have repeatedly emphasized that "the core policy underlying the unenforceability of noncompetition provisions is a prohibition on the restraint of trade." *Phoenix Cap., Inc. v. Dowell*, 176 P.3d 835, 844 (Colo. App. 2007). To that end, the *Phoenix Capital* court held that a customer non-solicitation agreement—which clearly does not fall within the "black letter" definition of a non-compete agreement because all parties are free to "engage in the same type of business," just not with the same people—violates C.R.S. § 8-2-113 because it "would have **had the effect of** restricting [the former employee] from working for another employer in the recruitment business." *Id*. at 844 (emphasis added) (quoting *Mgmt. Recruiters of Boulder, Inc. v. Miller*, 762 P.2d 763, 765 (Colo. App. 1988)).[2] This focus on the effect, rather than the form, of the agreement compels the conclusion that an agreement between competing businesses that they will not hire each others' workers restrains worker mobility just as surely as an agreement between a business and worker that the worker will not do business with a company's former clients or accept a job with a competitor.

Caselaw interpreting analogous statutory language in other jurisdictions confirms that broad bans on non-compete covenants are frequently read to encompass no-poach and no-hire agreements between employers. For instance, California's prohibition on noncompete agreements

---

an employer and an employee but nowhere holds that a covenant not to compete *must* be between an employer and employee. The Recommendation also cites 1 James O. Castagnera, Patrick J. Cihon, & Andrew P. Morriss, Termination of Employment, § 8:39: Restrictive covenants and trade secrets (April 2026 Update), which summarizes § 8-2-113 in the context of an employment treatise but does not provide any insight into whether or not the statute applies beyond worker-employer relationships.

[2] Notably, while non-solicitation agreements are now mentioned explicitly in C.R.S. § 8-2-113, they were not mentioned in the statute at the time *Phoenix Capital* and *Management Recruiters* were decided.

renders void "every contract by which anyone is restrained from engaging in a lawful profession, trade or business," Cal. Bus. & Prof. Code § 16600(a), which California courts have interpreted to apply to "anti-poaching agreements where two businesses agree not to hire each other's employees," *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1250 (N.D. Cal. 2022). *See also, e.g.*, *VL Sys., Inc. v. Unisen, Inc.*, 152 Cal. App. 4th 708, 718 (2007). Similarly, in *Heyde Cos., Inc. v. Dove Healthcare*, 654 N.W.2d 830 (Wis. 2002), the Wisconsin Supreme Court held that the state's law titled "Restrictive covenants in employment contracts" applied to no-hire agreements even though it "only refers to covenants between employers and employees." *Id*. at 833-34. The court held that:

> The effect of the no-hire provision is to restrict the employment of Greenbriar's employees; it is inconsequential whether the restriction is termed a 'no-hire' provision between Dove and Greenbriar or a "covenant not to compete" between Greenbriar and its employees. **Greenbriar is not allowed to accomplish by indirection that which it cannot accomplish directly.**

*Id*. at 834 (emphasis added). As a California appeals court noted, "most sister state jurisdictions that have reviewed this issue have reached a similar conclusion." *VL Sys., Inc.*, 152 Cal. App. 4th at 716; *see also Pittsburgh Logistics Sys., Inc. v. Beemack Trucking, LLC*, 249 A.3d 918, 920–21 (Penn. 2021); *Communication Technical Sys. v. Densmore*, 583 N.W.2d 125 (S.D.1998). In the absence of binding Colorado precedent, this Court may look to other states' interpretations of analogous statutes. *See, e.g.*, *Hall v. Walter*, 969 P.2d 224, 232–33 (Colo. 1998).

Notably, Colorado's statutory revision was enacted after the above-cited cases were handed down, when the applicability (or potential applicability) of the statute to no-hire agreements was understood. If the legislature had wanted to narrow the application of Colorado's law to horizontal agreements between employers and employees, it could easily have done so by adopting statutory

language from a different state, such as Illinois, that defines the category of prohibited covenants more narrowly. *See* 820 Ill. Comp. Stat. 90/50 (defining "Covenant not to compete" as "an agreement *between an employer and an employee* . . . .") (emphasis added). The Colorado General Assembly knows how to write a narrowly tailored definition when it wants to. *See Regents of Univ. of Colorado v. Students of Concealed Carry on Campus, LLC*, 271 P.3d 496, 500 (Colo. 2012).

**C. Neither the 2022 legislation nor the pre-2022 case law support Defendants' interpretation.**

Finally, the Recommendation places too much weight on Plaintiff's inability to identify pre-2022 cases concerning the statute's application to covenants *"between [d]efendant[]"* employers. (Recommendation at 23). The Recommendation interprets this absence in view of the 2022 legislative statement of purpose that the statute is intended to "preserve existing state and federal case law in effect before August 10, 2022," C.R.S. § 8-2-113(1), concluding that this language forecloses application of the statute to types of covenants not previously analyzed by a court. The Recommendation's logic is misguided for two reasons.

To start, legislative history reveals that the 2022 statement of purpose is unrelated to the issue of whether agreements between employers were permitted under § 8-2-113. After the bill was introduced, the sponsor proposed an amendment to add the statement of purpose (now codified at C.R.S. § 8-2-113(1)) to clarify that the legislative intent was "to preserve existing state and federal case law" concerning "what counts as a covenant not to compete" and "the extent to which a covenant not to compete for the protection of trade secretes must be tailored in scope in order to be enforceable." *See* 73rd Colo. Gen. Assembly, H. Journal Jan. 12, 2022 at 1059 (noting adoption

of Amendment No. 6); C.R.S. § 8-2-113(1). Archived footage of House proceedings[3] confirms that the amendment was drafted to ensure that courts would not interpret the legislation as a wholesale rejection of the existing case law enshrined in *Phoenix Capital* and *Management Recruiters*, discussed above, holding that courts look to the purpose and effect of a covenant to determine whether it is prohibited by C.R.S. § 8-2-113. There is no evidence in the legislative record that subsection 1 was enacted to narrow the new cause of action created by subsection 8, which was enacted at the same time, or to allow employers to restrict employee mobility so long as the employees are not party to the contract imposing the restriction.

Second, the Recommendation's logic ignores the practical impossibility of challenging no-hire agreements prior to the enactment of subsection 8. Before 2022, the affirmative cause of action at issue in this case did not exist. As a result, prior to the revision, the primary context in which the meaning of the statute was litigated was in cases brought by employers attempting to enforce covenants against their former workers, who then challenged the covenant's enforceability under C.R.S. § 8-2-113 in their own defense. *See, e.g.*, *Miller*, 762 P.2d at 764 ("Miller left Recruiters' employ and organized his own recruitment agency . . . . Recruiters brought this action seeking injunctive relief and damages."); *Phoenix*, 176 P.3d at 839 ("Phoenix instituted the present action, seeking injunctive relief to enforce. . . noncompetition and non-solicitation provisions in Dowell's employment agreement.").

---

[3] Recordings of all Colorado legislative proceedings since 2016 are available online at ColoradoChannel.net. House proceedings for April 14, 2022 are available at the following link: https://colorado.open.media/sessions/242749/colorado-house-2022-legislative-day-093 (*see* 2:03:10–2:04:55).

Because workers did not have an affirmative cause of action against their employers prior to the 2022 amendments, they did not bring cases pleading that cause of action, and there are no opinions interpreting it. *See, e.g.*, *Edwards Lifesciences LLC v. Thompson et al.*, No. 24-CV-02558-RMR-KAS, 2026 WL 951017, at *14 (D. Colo. Feb. 27, 2026), *R&R adopted*, 2026 WL 873953 (D. Colo. Mar. 31, 2026) (dismissing a worker's counterclaim under C.R.S. § 8-2-113 because the contract at issue was governed by the pre-2022 statute, which "did not authorize a private right of action for monetary damages"). As described above, that changed in 2022, when the Legislature created a private cause of action to better effectuate Colorado's strong public policy against non-competes. *See Phoenix Capital*, 176 P.3d 835 at 840. It would fatally undermine the intent of these amendments to rely on pre-2022 case law, a period in which workers had no private right of action under § 8-2-113, to conclude that they still have no private right of action post-amendment.

## CONCLUSION

For the reasons set forth above, the Court should reject the Recommendation with respect to Count II and deny Defendants' MTD I in its entirety.

Respectfully submitted this 14th day of April 2026.

*s/ Rachel W. Dempsey*

**Towards Justice**
Juno Turner
David H. Seligman
Rachel W. Dempsey
P.O. Box 371689, PMB 44465
Denver, CO 80237-5680
Telephone: (720) 441-2236
juno@towardsjustice.org
david@towardsjustice.org

rachel@towardsjustice.org

**Spark Justice Law LLC**
Laura B. Wolf
3435 S. Inca Street, Suite C-113
Englewood, CO 80110
Telephone: (303) 802-5390
Facsimile: (303) 848-3003
laura@spark-law.com

**ALR Civil Rights LLC**
Aurora L. Randolph
9878 W. Belleview Ave., Suite 2129
Denver, CO 80123
Telephone: (303) 968-1703 (t)
aurora@alrcivilrights.com

**Nichols Kaster, PLLP**
Rachhana T. Srey
H. Clara Coleman
4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
srey@nka.com
ccoleman@nka.com

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of April 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

*s/ Rachel W. Dempsey*

Rachel W. Dempsey