**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-00031-JLK-TPO

ANNA WISE, on behalf of herself
and the Proposed Rule 23 Class,

Plaintiff,

v.

AMENTUM SERVICES INC.;
GANA-A'YOO SERVICES CORPORATION;
SIX MILE LLC;
GRAY HAWK GLOBAL CORPORATION; and
LEIDOS, INC.

Defendants.

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO RECOMMENDATION**

---

Pursuant to Fed. R. Civ. P. 72(b), Plaintiff Anna Wise submits this response to Defendants' objections (hereafter "Defs. Obj.") (ECF No. 109) to Magistrate Judge O'Hara's Recommendation (hereafter "Recommendation") (ECF No. 105) as it pertains to Count I of the First Amended Complaint ("FAC") (ECF No. 67). The Court should adopt Judge O'Hara's Recommendation as to Count I and deny Defendant's Motion to Dismiss Counts I & II ("MTD I") (ECF No. 69).

## INTRODUCTION

Carefully applying the proper pleading standard, Judge O'Hara correctly concluded that the FAC plausibly alleges a *per se* violation of Section 1 of the Sherman Act. Defendants object on the grounds that Judge O'Hara erred in analyzing whether the FAC adequately alleges (1) "concerted action" among Defendants, and (2) the use of naked restraints that qualify for *per* se treatment. (Defs. Obj. at 3, 8.) Defendants' objection mispresents the applicable law and, as Judge

O'Hara recognized, rests entirely on contested factual inferences that cannot properly be drawn in Defendants' favor at this stage. (Recommendation at 12, 17.)

## ARGUMENT

### I. The FAC Plausibly Alleges that Defendants Are Independent Decisionmakers in the Labor Market.

Defendants first object that Judge O'Hara erred by concluding that FAC adequately alleges that Defendants are separate entities capable of "concerted action." (Defs. Obj. at 3–8.) Instead, Defendants argue that the conduct alleged in the FAC must be interpreted as lawful cooperation within a "single economic enterprise." (*Id.* at 7.) Defendants' invocation of the single-entity defense misconstrues the FAC and misapplies both the law and the relevant pleading standard.

As the Recommendation explains, Section 1 of the Sherman Act applies to "concerted action," which is defined as an agreement among "separate economic actors pursuing separate economic interests." (Recommendation at 12 (quoting *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 195 (2010).) The key question in determining whether a "contract, combination, or conspiracy" constitutes impermissible concerted action is "whether the agreement joins together 'independent centers of decisionmaking.'" *Am. Needle*, 560 U.S. at 196 (quoting *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 (1984)); *see also Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1231–35 (10th Cir. 2017). This is a "fact-specific inquiry" that entails a "functional consideration of how the parties involved in the alleged anticompetitive agreement actually operate." *Kissing Camels Surgery Ctr., LLC v. Centura Health Corp.*, 2016 WL 8416760, at *5 (D. Colo. July 13, 2016) (citations omitted). At the pleading phase, the proper inquiry is whether the complaint alleges facts from which it can plausibly be inferred that Defendants operate as independent decisionmakers in the relevant market. *See, e.g.*, *Arrington v.*

*Burger King Worldwide, Inc.*, 47 F.4th 1247, 1255–57 (11th Cir. 2022); *Kissing Camels*, 2016 WL 8416760, at *5 (rejecting "single entity theory as a basis to dismiss . . . at the pleading phase").

Defendants argue that the Recommendation's functional analysis of their inter-entity relationships is flawed in three related respects. First, Defendants argue that Judge O'Hara erred in emphasizing the fact that Defendants are distinct corporate entities with different hiring processes and recruiters. (Defs. Obj. at 5.) Second, Defendants argue that Judge O'Hara misinterpreted the relevance of the contractual relationship between Leidos and its subcontractors. (*Id*. at 6.) And third, Defendants argue that Judge O'Hara ignored other features of their staffing structures suggestive of lawful collaboration, rather than competition. (*Id*. 7.) Taken together, these arguments reveal a unified misinterpretation of the relevant legal framework and its application to the allegations in the FAC.

To start, Defendants' argument repeats the erroneous view, which has already been briefed at length, that businesses selling services in connection with a common commercial goal—here, the provision of staffing at a single research base—are immune from liability under Section 1 as a matter of law. (*See* Pl. Opp'n to MTD 8–16, ECF No. 77 ("MTD Opp'n").) For the reasons set forth in prior briefing and summarized in the Recommendation, Defendants' view of the law is wrong. (*See id*.; Recommendation at 9–13.) As Defendants themselves acknowledge, the concerted action inquiry does not ask whether the parties to an agreement share *any* interests in common—*all* agreements involve shared interests in one form or another—it is whether the parties share a "complete unity of interest." (Defs. Obj. at 4 (quoting *Am. Needle*, 560 U.S. at 195–96).) Companies can have "some economic interests in common" while retaining separate "economic interests when hiring employees." *Arrington*, 47 F.4th at 1256.

Here, the FAC clearly alleges facts from which the requisite degree of independence can be inferred. To start, the FAC alleges that Defendants are separate corporate entities (*see* FAC ¶¶ 19–23) and, with the exception of GSC and Six Mile (*see* Defs. Obj. at 3 n.1), there is no evidence that they are commonly owned or controlled by a single parent entity. These facts, while not dispositive, are certainly relevant indicators of independence. *See Am. Needle*, 560 U.S. at 195–96. Likewise, and as Judge O'Hara correctly explained (Recommendation at 11), the fact that Defendants each employ their own internal recruiters to hire candidates—many of whom apply for jobs with more than one Defendant at a time—strongly supports the inference that Defendants are "independent center[s] of decisionmaking" with competing interests within the labor market. *Arrington*, 47 F.4th at 1256. It is entirely reasonable to infer that, in the absence of the alleged no-poach and blacklisting agreements, Defendants would compete for workers more vigorously and, in some cases, extend job offers that are currently foreclosed by the agreements. *Id*. On the other hand, it is *unreasonable* to infer that the blacklisting and no-poach agreements—which, as the FAC alleges, undermine workers' bargaining power and suppress their wages—do not promote Defendants' individual economic interests in maximizing the profit that they earn from their respective contracts and subcontracts. (*See* FAC ¶¶ 1, 14-15, 66, 216.)

To that end, Defendants baselessly suggest that "the specific economic context alleged here—a prime contractor and its subcontractors" creates some sort of presumption that the single entity defense applies. (Defs. Opp'n at 6.) They cite no authority for this proposition, and there is none. As Plaintiffs have previously argued, a subcontractor is not deemed to have a unity of purpose with a prime contractor as a matter of law. *See* MTD Opp'n at 13–14; *Flaugh v. Empire Clay Prods., Inc.*, 157 Colo. 409, 411 (1965). And the fact that, as Defendants emphasize, "the

only reason Amentum, Six Mile, GSC, and GHG are hiring for the ASC is because of their vertical agreements with Leidos," does not immunize their horizonal no-poach and blacklisting claims from antitrust liability. (Defs. Opp'n at 2, 5, 6). *Holter v. Moore & Co.*, 702 F.2d 854, 856 (10th Cir. 1983), the sole case Defendants cite for this proposition, does not support it. That case, which the Recommendation emphasized was decided at summary judgment (Recommendation at 6), determined based on a full factual record that real estate agents and the broker they worked for were akin to "a firm and its employees" rather than "separate vertical and horizontal units." *Id*. at 855. Nowhere did *Holter* suggest a blanket rule, as posited by Defendants, that "when alleged co-conspirators are dependent on the permission of another co-conspirator to participate in the alleged market . . . they are not independent sources of decision-making in that market." (Defs. Opp'n at 6.) To the contrary, *Holter* emphasized that application of the single entity defense is inherently fraught with "uncertainty" and requires "case-by-case resolutions." 702 F.2d at 856.

In this case, at the pleadings stage, Defendants' single-entity defense relies entirely on drawing impermissible factual inferences in Defendants' favor. As Judge O'Hara recognized, Defendants' argument that they should be treated as having a "complete unity of interest," *Am. Needle*, 560 U.S. at 195–96, rests upon Defendants' own assertions about, *inter alia*, the inner workings of the Defendant entities, their economic interests, and the purpose of the alleged agreements. (Recommendation at 11–12.) Drawing such inferences in Defendants' favor is not permitted at this stage in the litigation. Having pleaded facts from which concerted action can plausibly be inferred, Plaintiff is entitled to discovery regarding how Defendants "actually operate," *Kissing Camels*, 2016 WL 8416760, at *5. The Court should adopt Judge O'Hara's

analysis and decline to shield Defendants' conduct under the single-entity defense as a matter of law.

## II. The FAC properly pleads a *per se* violation.

Defendants' second objection concerns Judge O'Hara's conclusion that Plaintiff has plausibly alleged a *per se* violation of § 1. (Defs. Obj. at 8–15.) Their argument is, in sum, that Plaintiff's acknowledgment of Defendants' contractual relationships under the Antarctic Support Contract ("ASC") is tantamount to a concession that the alleged restraints are ancillary to a procompetitive, cooperative arrangement. *See id*. at 11 ("[B]ecause Defendants are[] alleged to be working together pursuant to a vertical arrangement with Leidos, the alleged restrictions . . . cannot be *per se* illegal."). Defendants' logic is wrong at every step.

First, Defendants mischaracterize the definition of a naked restraint. A naked restraint has "no purpose except stifling competition." *United States v. DaVita Inc.*, 2022 WL 266759, at *4 (D. Colo. Jan. 28, 2022). This does not mean, as Defendants argue, that in any otherwise-anticompetitive agreement that is part of a "broader, lawful collaboration, the restraint cannot be 'naked' as a matter of law." (Defs. Obj. at 10.) Rather, the question is whether the challenged restraint itself has a procompetitive purpose within the context of the broader collaboration. *See, e.g.*, *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 339 (2d Cir. 2008) (Sotomayor, J., concurring); *see also* MTD Opp'n at 19. In evaluating this, courts must assess whether a challenged restraint "increase[s] the efficiency" of the broader collaboration and whether it is "broader than necessary to achieve asserted procompetitive goals." *Bd. of Regents of Univ. of Oklahoma v. Nat'l Collegiate Athletic Ass'n,* 707 F.2d 1147, 1153 (10th Cir. 1983), *aff'd*, 468 U.S. 85 (1984). In *SCFC ILC, Inc. v. Visa USA, Inc.*, the Tenth Circuit observed that courts decline to

impose *per se* treatment on restraints that are "essential to make the product [of a joint venture] available at all." 36 F.3d 958, 964 (10th Cir. 1994). "Underlying these cases is an effort to appreciate the economic reality of the particular business behavior to assure that the procompetitive goals, in fact, are neither undervalued nor mask a reduction in competition." *Id*.

This balancing act is by its nature a fact-bound inquiry, and contrary to Defendants' assertion, Judge O'Hara weighed the pleaded facts as appropriate at the motion to dismiss stage.[1] While he considered Defendants' argument that the no-poach and blacklisting agreements promoted "efficient staffing" and were therefore reasonably necessary to the broader goal of fulfilling the ASC, (Recommendation at 18), he correctly concluded that it would be improper to "accept Defendants' explanations for [the] conduct" given the facts pleaded in the FAC. (*Id*. at 20.) He also noted that "[f]acially, there is no logical economic efficiency or procompetitive purpose from blacklisting employees for any purpose, and especially when the blacklisting occurs because an employee is raising concerns about wage disparity or working conditions." (*Id*. at 16.) Defendants may, of course, continue to pursue the defense that their alleged conduct was reasonably necessary to advance the procompetitive features of the ASC in litigation, but that question cannot be decided as a matter of law, without the benefit of additional discovery.

---

[1] Defendants criticize Judge O'Hara's invocation of *United States v. Patel*, 2022 WL 17404509 (D. Conn. Dec. 2, 2022), on the grounds that the cited passage "dealt with whether the indictment pled a market allocation . . . not whether the alleged no hire was a naked restraint." (Defs. Obj. 11 n.3.) But the *Patel* court directly addressed whether the no-hire agreement was a naked restraint in detail. *Id*. at *11-14. The court declined to accept the defendants' characterization of the restraint as reasonably necessary to the broader collaboration based on "facts not included in the indictment," stating that "such arguments are better suited for a later stage of the proceedings." 2022 WL 17404509, *14. This conclusion perfectly tracks Judge O'Hara's analysis and his conclusion that, at this state, it would be inappropriate to accept Defendants assertion that the "supposed arrangements" are ancillary to procompetitive collaboration. (Recommendation at 17.)

The cases Defendants cite in support of their inaccurate definition of a naked restraint are easily distinguishable or actually contradict their arguments. For example, Defendants bizarrely describe *SCFC ILC* as holding that "*per se* scrutiny [is] 'inappropriate[]' for [a] restraint related to a legitimate collaboration." (Defs. Obj. at 13.) That appears to be an extraordinarily loose paraphrase of the following paragraph:

> Similarly, in *NCAA v. Board of Regents of Univ. of Okla.*, 468 U.S. 85, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984), the Court held inappropriate the application of *per se* treatment to the NCAA's horizontal price fixing and output limitation of the number of games college football teams could negotiate to televise. Again the Court recognized the horizontal restraint on competition was essential to make the product available at all. *Id*. at 101, 104 S.Ct. at 2960. Under a rule of reason analysis, however, the rule decreased output and had the effect of increasing prices. While cooperation may be necessary and justified, the Court suggested it fit a different mold, such as, "rules defining the condition of the contest, the eligibility of participants, or the manner in which members of a joint enterprise shall share the responsibilities and the benefits of the total venture." *Id*. at 117, 104 S.Ct. at 2969.

*SCFC ILC, Inc.*, 36 F.3d at 964. Particularly given that *SCFC ILC* is Tenth Circuit precedent and therefore binding, Defendant's summary of the holding borders on misrepresentation. As set forth above, *SCFC ILC* case does not hold that *per se* analysis never applies to an otherwise-unlawful restraint so long as that restraint is subordinate to any form of "legitimate collaboration." It holds that whether *per se* analysis applies to restraints that arise within the context of a broader collaboration must be assessed with regard to the procompetitive purpose of that collaboration, and in particular to whether the challenged restraints are "essential" to achieving the collaboration's procompetitive goals. *SCFC ILC, Inc.*, 36 F.3d at 964. Similarly, *Medical Center at Elizabeth Place, LLC v. Atrium Health System*, 922 F.3d 713 (6th Cir. 2019), held that a "naked restraint" deserving of "per se condemnation" can still "lurk[] beneath the veneer of a legitimate joint venture." *Id*. at 721–22. In *Foreign Trade Corp. v. Otter Products, LLC*, 2017 WL 11686317,

at *4 (D. Colo. Feb. 15, 2017), the court considered detailed factual allegations based on substantial discovery to conclude that the challenged restraint was reasonably necessary to advance the core efficiencies of the joint venture, as evidenced by the problems that arose in the absence of the restraint. *Id*. at *4. In *Gregory v. Fort Bridger Rendezvous Ass'n*, 448 F.3d 1195, 1204 (10th Cir. 2006), the court determined that the defendants' broader collaboration would be "rendered impossible" in the absence of the challenged restraint. And in *National Collegiate Athletic Ass'n v. Alston*, 594 U.S. 69, (2021), the Supreme Court noted that *per se* treatment of the NCAA's restraints on trade was not merited because the they "arose in 'an industry' in which some 'horizontal restraints on competition are essential if the product is to be available at all.'" *Id*. at 91 (quoting *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Oklahoma*, 468 U.S. 85, 101 (1984)).

None of these cases so much as suggest a rule that *per se* treatment is never appropriate when a challenged restraint is in any way related to a broader collaboration. The closest Defendants get to a case that supports their position is *Giordano v. Saks Inc.*, 654 F.Supp.3d 174 (E.D.N.Y. 2023), which the Recommendation considered but distinguished on the facts and noted goes against the weight of authority. (Recommendation at 19.) Even in *Giordano*, the court relied in part on the plaintiffs' own admissions that the no-poach agreement was related to the procompetitive effects of the broader collaboration. 654 F.Supp.3d at 201. As set forth above, the Recommendation properly determined that the FAC at issue here contains no comparable allegations.

Finally, Defendants repeatedly—and misleadingly—refer to the no-poach and blacklisting agreements as "vertical agreements with Leidos," (Defs. Obj. at 2, 5, 6), and fault the Court for

not properly considering *United States v. Brewbaker*, 87 F.4th 563 (4th Cir. 2023), which they claim holds that agreements that arise in the context of relationships with vertical and horizontal components can never be subject to *per se* treatment, (Defs. Obj. at 14). This argument, which Defendants concede they did not raise in their Motion to Dismiss, (Defs. Obj. at 14 n.4), grossly misrepresents what the FAC alleges, which is that in addition to the vertical subcontracts between Leidos and the other Defendants, Defendants have no-poach and blacklisting agreements that operate within the horizontal labor market within which they compete directly for employees (*see* FAC ¶¶ 58–59, 71–74). "[C]ourts have long recognized the existence of 'hub-and-spoke' conspiracies in which an entity at one level of the market structure, the 'hub,' coordinates an agreement among competitors at a different level, the 'spokes.'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 242 (S.D.N.Y. 2019) (quoting *United States v. Apple, Inc.*, 791 F.3d 290, 314 (2d Cir. 2015)). The key to a hub-and-spoke conspiracy is that there are "both vertical agreements between the hub and each spoke, and also a horizontal agreement among the various spokes with each other." *Id.* at 242-43 (quoting *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 376 (S.D.N.Y. 2016). *Per-se* treatment of a hub-and-spoke conspiracy is appropriate where, as here, the challenged *restraint* is horizontal, notwithstanding vertical elements in the parties' relationship. *See, e.g.*, *Patel*, 2022 WL 17404509, at *15 ("For the *per se* rule to be inapplicable, however, *the restraint itself*, not just the parties' relationship, must have vertical and horizontal characteristics." (emphasis added)).

Because Defendants did not raise this argument in their opening brief, the Recommendation does not address it directly, but it appropriately recognizes that the FAC "pleads horizontal agreement, between different economic actors, to manipulate the employment market."

(Recommendation at 16.) *Brewbaker* does not change this conclusion. That case concerns a *per se* Section 1 criminal indictment charging two participants in a "bid rigging" scheme, whereby one company (Pomona) agreed to let its competitor (Contech) win projects on the condition that Contech would buy materials from Pomona to complete the projects. 87 F.4th at 569–71. Reversing the trial court's denial of the defendants' motion to dismiss, the Fourth Circuit explained that the trial court erred by (1) ignoring that the agreement between the two companies to restrain trade had both horizontal and vertical characteristics, *id*. at 576, and (2) failing to take into account available "economic analysis" of the "plausible procompetitive effects" of the "hybrid restraint," *id*. at 580. Here, in contrast, while the *relationship* between Leidos and its subcontractors has vertical elements, the challenged *restraint* is horizontal. Indeed, *Brewbaker* explicitly distinguished the facts there from hub-and-spoke conspiracies where there is a "traditional horizontal conspiracy" with a "vertically related facilitator." *See id*. 577–78 (quoting Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1402c (4th ed. 2013)); *see also Patel*, 2022 WL 17404509, at *15–16 (distinguishing hub-and-spoke conspiracy from cases where "alleged conduct seems to have some characteristics of both horizontal and vertical restraints" (citation omitted)). And, unlike in *Brewbaker*, nothing in the FAC suggests that the no-poach and blacklisting agreements have any procompetitive effect. Even setting those contextual differences aside, it is simply not true that Judge O'Hara declined to consider the relationship between the parties. To the contrary, the Recommendation demonstrates that Judge O'Hara clearly understood the structure of the alleged arrangement (*see* Recommendation at 2–3; 11–13) but concluded that the true relationship between challenged restraints and some lawful broader collaborative enterprise could not properly be evaluated this stage, (*id*. at 12.)

## CONCLUSION

For the reasons set forth above, the Court should adopt the Recommendation with respect to Count I and deny Defendants' motion to dismiss in its entirety.

Respectfully submitted this 28th day of April 2026.

*s/ Rachel W. Dempsey*

**Towards Justice**
Juno Turner
David H. Seligman
Rachel W. Dempsey
P.O. Box 371689, PMB 44465
Denver, CO 80237-5680
Telephone: (720) 441-2236
juno@towardsjustice.org
david@towardsjustice.org
rachel@towardsjustice.org

**Spark Justice Law LLC**
Laura B. Wolf
3435 S. Inca Street, Suite C-113
Englewood, CO 80110
Telephone: (303) 802-5390
Facsimile: (303) 848-3003
laura@spark-law.com

**ALR Civil Rights LLC**
Aurora L. Randolph
9878 W. Belleview Ave., Suite 2129
Denver, CO 80123
Telephone: (303) 968-1703 (t)
aurora@alrcivilrights.com

**Nichols Kaster, PLLP**
Rachhana T. Srey
H. Clara Coleman
4700 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
srey@nka.com
ccoleman@nka.com

*Attorneys for Plaintiff and the Putative Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of April 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on the CM/ECF system.

*s/ Rachel W. Dempsey*
Rachel W. Dempsey